# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

A.S.A.,                                                              Case No. 20-cv-74 (ECW)

             Plaintiff,

v.                                                                    **ORDER**

 ANDREW M. SAUL,
Commissioner of Social Security,

             Defendant.

_____

This matter is before the Court on Defendant Commissioner of Social Security

Andrew Saul's ("Defendant") Motion for Summary Judgment (Dkt. 22).  Plaintiff A.S.A.

("Plaintiff"), proceeding pro se, filed this case seeking judicial review of a final decision

by Defendant denying his application for supplementary security income.  For the

reasons stated below, Defendant's Motion is granted.

## I.    BACKGROUND

Plaintiff filed a Title XVI application for supplemental security income on July 17,

2017, alleging disability beginning April 6, 2010.  (R. 215-22, 241.)[1]  Plaintiff's

application alleged disability due to bipolar disorder and schizoaffective disorder.  (R.

244.)  His application was denied initially and on reconsideration.  (R. 157-60, 164-266.)

Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held

on April 18, 2019 before ALJ James Satterwhite.  (R. 9.)  The ALJ issued an unfavorable

_____

[1]     The Social Security Administrative Record ("R.") is available at Dkt. 12.

decision on June 4, 2019, finding that Plaintiff was not disabled from the application date through the date of the ALJ's decision.  (R. 12-29.)

Following the five-step sequential evaluation process under 20 C.F.R. § 416.920(a)[2] (R. 13), the ALJ first determined at step one that Plaintiff had not engaged in substantial gainful activity since July 29, 2015 (R. 14).  At step two, the ALJ determined that Plaintiff had the following severe impairments: schizophrenia; schizoaffective disorder; bipolar type; adjustment disorder with mixed anxiety and depressed mood; major depressive disorder; anxiety disorder with agoraphobia and posttraumatic features; unspecified personality disorder; and post-traumatic stress disorder.  (R. 15.)

At step three, the ALJ determined that Plaintiff did not have an impairment that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  (R. 17-19.)

At step four, after reviewing the entire record, the ALJ found Plaintiff's residual

---

[2]     The Eighth Circuit has described the five-step process as follows:

> The Commissioner of Social Security must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

*Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003).

functional capacity ("RFC") to be as follows:

> After careful consideration of the entire record, the undersigned finds that
> the claimant has the residual functional capacity to perform a full range of
> work at all exertional levels but with the following nonexertional limitations:
> the claimant can (on a sustained basis) understand, remember, and carry out
> simple, repetitive instructions; use judgment in making simple work-related
> decisions; respond appropriately to supervision, coworkers, and usual work
> situations but only in work environments and when performing tasks
> requiring brief and superficial contact with coworkers and supervisors and
> no contact with the public; and deal with changes in a routine work setting
> as long as those changes are infrequent (defined as one or two changes per
> week).

(R. 20.)

In arriving at this RFC, the ALJ found that Plaintiff's medically determinable

impairments could reasonably be expected to cause the alleged symptoms, but that

Plaintiff's statements concerning the intensity, persistence, and limiting effects of his

symptoms were not entirely consistent with the medical evidence and other evidence in

the record. (R. 21.)

At step five, the ALJ concluded that Plaintiff did not have any past relevant work

(R. 27), but that there existed jobs in significant numbers in the national economy that he

could perform given his age, education, work experience, and RFC (R. 27-28). Based on

the testimony of a vocational expert, the ALJ concluded that, given the RFC set forth

above, Plaintiff would be able to perform the requirements of a night cleaner (S.V.P.1

2/unskilled in nature, medium in exertion - D.O.T.2 # 358.687-010; 25,000 jobs in the

national economy), industrial cleaner (S.V.P. 2/unskilled in nature, medium in exertion -

D.O.T. # 381.687-018; 16,000 jobs in the national economy), and carton feeder (S.V.P.

2/unskilled in nature, medium in exertion - D.O.T. # 921.686-014; 17,000 jobs in the

national economy).  (R. 28.)

Accordingly, the ALJ deemed Plaintiff not disabled since July 17, 2017, the date

the application was filed, through the date of the June 4, 2019 decision.  (R. 28-29.)

Plaintiff requested review of the decision.  As part of the review, Plaintiff appears

to have submitted a June 4, 2019 "To whom it may concern" letter from Certified Nurse

Practitioner ("CNP") Therese Sundberg, which provides:

> To whom it may concern:
>
> This letter is written on behalf of my patient, [Plaintiff], who has applied for social security disability.
>
> I have known and treated [Plaintiff] for several years for psychiatric reasons. He is diagnosed with Schizoaffective Disorder, Bipolar Type.  He does experience periods of extreme difficulty due to mood changes, mania, depression, and psychosis.  He is seen on a regular basis and is treated with medication for his behavioral health/ mental health concerns.
>
> Although this patient has held employment for short periods, in his attempt to make his life financially feasible, he is not able to maintain employment for any long or extended periods of time.  It is my professional opinion that [Plaintiff] is not able to sustain employment and does need to be on social security disability because of his mental health disability.

(R. 8.)

On December 2, 2019, the Appeals Council denied Plaintiff's request for review,

which made the ALJ's decision the final decision of the Commissioner.  (R. 1-5.)

Plaintiff then commenced this action for judicial review.

The Court has reviewed the entire administrative record, giving particular

attention to the facts and records cited by the parties.  The Court will recount the facts of

record in its analysis only when it is helpful for context or necessary for resolution of the

specific issues presented by the parties.

The Court notes that although Plaintiff is alleging disability since April 6, 2010 (R. 215), SSI benefits are not payable prior to the application filing date, making the relevant period of review from July 17, 2017, the date Plaintiff filed his SSI application, to June 4, 2019, the date of the ALJ's decision. *See* 42 U.S.C. § 1382(c)(7); 20 C.F.R. § 416.335; *see also Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013) ("An application for disability benefits remains in effect only until the issuance of a 'hearing decision' on that application, so the evidence of [claimant's] admission [to a hospital for depression several months after the ALJ's determination] cannot affect the validity of the ALJ's determination.") (citing 20 C.F.R. §§ 404.620(a), 416.330); *Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989) ("Cruse asserts she was disabled before filing her application for SSI on March 22, 1983. However, SSI benefits are not payable for a period prior to the application . . . ."); *Storey v. Colvin*, No. C 14-4104-MWB, 2015 WL 5970669, at *1 (N.D. Iowa Oct. 14, 2015) ("However, SSI payments are not payable for a period prior to the application date, pursuant to 20 C.F.R. § 416.335, so the relevant period for a determination of whether or not Storey was disabled is from February 14, 2012, the date of his application, through June 11, 2013, the date of the ALJ's decision.").

While the Eighth Circuit has concluded that a district court's consideration of evidence outside of the record before the Commissioner is generally precluded, remand is warranted upon a showing that new evidence is material, i.e., non-cumulative, relevant, and probative of the claimant's condition for the period for which benefits were denied. *See Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997); *see also* 42 U.S.C. § 405(g).

Similarly, while "Plaintiff may not have been entitled to benefits prior to the application date, *see* 20 C.F.R. § 416.335, Plaintiff's medical records prior to the application and near or after the onset date were potentially relevant to the ALJ's determinations regarding Plaintiff's impairments, symptoms, credibility and limitations with respect to the period for which he could receive benefits." *Rutigliano v. Colvin*, No. CV 13-01897 AS, 2015 WL 3453338, at *3 (C.D. Cal. May 29, 2015); *see also* 20 C.F.R. § 416.912(d).

## II.     RELEVANT FACTUAL RECORD

### A.     Medical Record Before the ALJ

Plaintiff has a history starting before the date of his disability application of bipolar disorder and schizoaffective disorder that in some cases was exacerbated when he failed to take his medication or suffered from alcohol intoxication and led to altercations with himself, others, and the police.  (*See, e.g.*, R. 435, 439-40, 445, 453-55, 469-70, 499-50.)

Plaintiff was incarcerated at some point for the offense of Assault-2nd Degree Dangerous Weapon occurring in November 2014.  (R. 360.)

On January 18, 2017, while incarcerated, Plaintiff received a psychiatric assessment from the Minnesota Department of Corrections ("MNDOC").  (R. 366.) Plaintiff had been approved for work release, which was scheduled for April 4, 2017.  (R. 366.)  He reported that his last auditory hallucinations had occurred two months earlier when he heard "echoes" that had lasted for two days.  (R. 366.)  Plaintiff indicated that he withdrew, meditated, and distracted himself, and he thought that this helped the hallucinations go away.  (R. 366.)  Plaintiff made good eye contact and had normal

kinetics; his affect was stable with full range; mood was euthymic; and thoughts were
goal-directed and forward-looking.  (R. 366.)  Plaintiff denied current psychotic
symptoms, and there was no sign of internal stimuli.  (R. 366.)  He presented no
perceived risk to himself or others.  (R. 366.)  Plaintiff was diagnosed with
schizoaffective disorder, bipolar type, remaining in remission on medication.  (R. 366.)
Robert Fornal, M.D.'s impression was that Plaintiff was seriously mentally ill but stable
on medication.  (R. 366.)

A February 17, 2017 Discharge Summary from the MNDOC Behavioral Health
Program noted that Plaintiff had been diagnosed with schizoaffective disorder, bipolar
type.  (R. 356.)  It was found that the condition was in remission on medication.  (R.
356.)  Plaintiff presented as stable.  (R. 356.)

On March 10, 2017, Plaintiff was seen by the MNDOC Behavioral
Health/Psychological Services for routine follow-up and medication management.  (R.
365.)  Plaintiff reported no concerns or complaints.  (R. 365.)  Plaintiff indicated his
medications were working well and he was able to manage stressors in a productive
manner.  (R. 365.)  The assessment for Plaintiff was that he "reports, and presents, as
stable on current therapies and does not present as an individual at imminent risk of harm
to self/others."  (R. 365.)

On May 10, 2017, Plaintiff presented with an injury to his finger while working at
Kentucky Fried Chicken.  (R. 640.)  As a part of the review of his systems, it was noted
that Plaintiff reported no "significant anxiety, depression, or panic."  (R. 642 (emphasis
omitted).)  In addition, with respect to his assessment it was noted that Plaintiff "does not

appear depressed or anxious."  (R. 642.)

On August 1, 2017, Plaintiff was seen for a medication management review related to the treatment of his schizoaffective disorder, bipolar type.  (R. 700.)  Plaintiff had changed jobs, from working at Kentucky Fried Chicken to working as a housekeeper at Comfort Suites.  (R. 700.)  Plaintiff reported continuing to have the following symptoms: a lack of interest in doing things, feeling down, sleeping difficulties with resulting fatigue, feeling bad about himself, and trouble concentrating on things.  (R. 700.)  His PHQ-9 score was 9 points, indicating mild depression.  (R. 700.)  The psychiatric examination of Plaintiff showed him to be in no acute distress; alert, cooperative, and oriented to all spheres; with a generally euthymic mood and affect; his speech was of normal rate and rhythm; thought processes were logical and goal-directed without evidence of disorder; there was no evidence of delusions or hallucinations; immediate recall, recent memory and remote memory were intact; insight and judgment were intact; he was is neither suicidal nor homicidal; his fund of knowledge was average; and he was neatly groomed and appropriately dressed.  (R. 701.)  Plaintiff was instructed to continue to take his prescriptions, as prescribed.  (R. 702.)

On September 28, 2017, Plaintiff reported feeling a bit down as he had lost several of his friends due to shootings.  (R. 682.)  Plaintiff was medication-compliant and reported no side effects from his medications.  (R. 682.)  Plaintiff was in some acute distress; he was alert, cooperative, and oriented to all spheres; his mood and affect were generally euthymic; his speech was of normal rate and rhythm; his thought processes were logical and goal-directed without evidence of disorder; there was no evidence of

delusions or hallucinations; his immediate recall, recent memory, and remote memory were intact; his insight and judgment were intact; he was neither suicidal nor homicidal; his fund of knowledge was average; and he was neatly groomed and appropriately dressed. (R. 683.) The diagnostic impression for Plaintiff continued to be schizoaffective disorder, bipolar type. (R. 683.)

On October 3, 2017, Plaintiff was seen for a consultative examination by psychologist Marlin Trulsen, Ph.D., regarding Plaintiff's bipolar and schizoaffective disorder. (R. 685.) Plaintiff reported current employment at a part-time housekeeping position at a hotel and being in the position for four months, averaging twenty-five hours per week. (R. 685.) Plaintiff was not engaging in any counseling services but reported Zyprexa as his current medication for mood or behavior and noted a recent addition of Prozac. (R. 686.) Plaintiff noted continued experiences of visual hallucinations involving shadows seen from the corner of his eye, especially when stressed or feeling worried, and auditory hallucinations in the form of voices telling him negative things about himself or others, also noting occasions of the voices also saying positive things. (R. 686.) Plaintiff claimed that these experiences occurred approximately every other day, at any time throughout the day, and lasted approximately a minute. (R. 686.) Plaintiff did admit that his medications helped with symptom management. (R. 686.)

Plaintiff asserted experiencing continued difficulties with feeling less interested in activities with others and feeling increased irritability and worry about others. (R. 686.) Plaintiff's daily activities included going to work. (R. 687.) He also reported an adequate level of social life and social acquaintances and that he was capable of doing his

own cleaning, dishes, cooking, and laundry.  (R. 687.)  Further, Plaintiff was able to shop independently, preferring to go quickly and when there were fewer people present to help reduce anxiety experiences.  (R. 687.)

Plaintiff's mental status examination showed that: his frustration tolerance appeared developed at or near expected levels; he appeared generally alert and oriented; he made adequate eye contact with occasions of a somewhat distant look, and appeared in a pleasant to somewhat depressed mood; he demonstrated a somewhat flattened range of affect for topics discussed; his perceptions appeared adequate; and his judgment and insight appeared developed at generally expected levels.  (R. 687.)  He denied any self-injurious thoughts and behaviors or suicidal or homicidal thoughts and behaviors; he reported visual hallucinations of "shadows" seen from the corner of his eye and that these occurred approximately every other week, especially if he was stressed; he reported auditory hallucinations of background voices telling him negative or positive things about himself or others and lasting approximately one minute and occurring every other day throughout the day, noting medications as helpful; his speech was normal for pitch, rate, and volume, with content noticeable for occasions of somewhat excessive detail that became increasingly unrelated to the original topic and required some redirection; his stream of consciousness appeared appropriate for topics discussed; and he endorsed symptoms associated with a depressive disorder, noting feelings of depressed mood over the past two years, feelings of anhedonia, and some feelings of hopelessness.  (R. 687.)

Plaintiff demonstrated adequate general memory skills and long-term memory abilities observed for daily living skill needs.  (R. 688.)  Plaintiff's overall IQ was

estimated in the average to low average range from general use of language skills.  (R. 688.)  Plaintiff's abstract thinking was average to low average.  (R. 688.)  With respect to his functional capacity, Dr. Trulsen opined as follows:

> [Plaintiff's] general mental capacity for understanding appears to demonstrate occasions of slight impairment due to interference with current mental health difficulties.  His general mental capacity for remembering and following instructions appear to demonstrate a slight level of impairment; with his general mental capacity for sustaining attention and concentrating appearing to demonstrate a slight to occasionally moderate level of impairment due to interference with current mental health difficulties.  His general mental capacity for car[ry]ing out work like tasks with reasonable persistence and pace, and responding appropriately to brief and superficial contact with coworkers and supervisors appear to demonstrate a moderate level of impairment; with his general mental for tolerating stress and pressures typically found in an entry-level workplace appearing to demonstrate a moderate to occasionally marked level of impairment due to interference with current mental health difficulties.
>
> [Plaintiff] appears capable of respecting authority to an average level with no impairment noted.  Gait and station appeared average with no difficulties sitting, standing or walking.  He demonstrated an average ability to hear and produce normal conversation and sustained speech.

(R. 688-89.)

On October 18, 2017, State Agency Psychologist Michael E. Cremerius, Ph.D., issued a mental RFC for Plaintiff.  (R. 133.)  With respect to understanding and memory limitations, Dr. Cremerius found that Plaintiff was moderately limited as to his ability to remember locations and work-like procedures and in his ability to understand and remember very short and simple instructions.  (R. 133.)  Plaintiff was markedly limited as to his ability to understand and remember detailed instructions.  (R. 133.)  Dr. Cremerius ultimately determined that Plaintiff was limited to understanding and remembering simple instructions.  (R. 133.)

As to his concentration and persistence, Plaintiff was moderately limited as to his ability to: carry out very short and simple instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or in proximity to others without being distracted by them; make simple work-related decisions; and complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (R. 133-34.) Plaintiff was markedly limited as to his ability to carry out detailed instructions and not significantly limited as to his ability to sustain an ordinary routine without special supervision. (R. 133-34.) Dr. Cremerius ultimately determined that Plaintiff was limited to performing simple and routine tasks. (R. 134.)

With respect to his social interaction limitations, Dr. Cremerius opined that Plaintiff would be limited to brief and superficial contact with co-workers and supervisors and no contact with the public, and that he would be limited to adapting to only routine changes in the workplace setting (with a moderate limitation to his ability to respond appropriately to changes in the work setting). (R. 134-35.)

As part of the Commissioner's reconsideration, State Agency Psychologist Mary Sullivan, Ph.D., opined on December 1, 2017 that Plaintiff would be able to carry out routine, repetitive, and 3-4 step tasks with reasonably sustained persistence and pace, but would be moderately impaired for detailed tasks, and markedly so for complex, technical tasks; would be limited to brief and superficial contact with co-workers, supervisors, and

the public; and would have no limitations as to his ability to adapt to changes in the work environment.  (R. 150-51.)

On January 4, 2018, Plaintiff was seen for a medication management review related to the treatment of his schizoaffective disorder, bipolar type.  (R. 694.)  He reported that he had been taking his medication as prescribed with no side effects.  (R. 694.)  He denied having a lot of concerns and had been trying to take care of himself, but had recently lost his Social Security disability benefits because he was working part time at Comfort Inn and Suites in housekeeping.  (R. 694.)  His PHQ-9 score indicated mild depression.  (R. 694.)  It was noted that Plaintiff "was doing well."  (R. 695.)  The psychiatric examination revealed that Plaintiff was not in acute distress; he was alert, cooperative, and oriented to all spheres, with a euthymic mood and affect; he had a normal rate and rhythm of speech; his thought process was logical and goal-directed without evidence of disorder; there was no evidence of delusions or hallucinations; his immediate recall, recent memory, and remote memory were intact; his insight and judgment were intact; he was neither suicidal nor homicidal; his fund of knowledge was average; and he was neatly groomed and appropriately dressed.  (R. 695.)

On November 15, 2018, Plaintiff was seen for the treatment of his schizoaffective disorder.  (R. 706.)  Plaintiff reported that he recently had run out of his medications or not picked up his next refill and wound up going into the emergency room because he felt that he needed some type of treatment.  (R. 706.)  Plaintiff reported that while in the emergency room he became agitated, but he did settle down and became cooperative with staff.  (R. 706.)  He was released to home with his medications refilled, and he had been

doing well since. (R. 706.)  Plaintiff desired no additional changes to his medications and reported being stable. (R. 706.)  He was living with some friends, and his son was also living with him. (R. 706-07.)  Plaintiff claimed that he got adequate social interaction and outlets through family and friends. (R. 707.)  Plaintiff also reported taking a part-time job in housekeeping at a local hotel. (R. 707.)  Plaintiff's PHQ-9 score was 10 points, indicating mild depression, which included symptoms of a lack of interest in doing things, feeling down, trouble sleeping with resulting fatigue, feeling bad about himself, and having trouble concentrating. (R. 707.)  Plaintiff's psychiatric exam showed that he was in no acute distress and that he was alert, cooperative, and oriented to all spheres. (R. 707.)  His mood and affect were generally euthymic, and his speech was of normal rate and rhythm. (R. 707.)  Plaintiff's thought processes were logical and goal-directed without evidence of disorder. (R. 707.)  There was no evidence of delusions or hallucinations; immediate recall, recent memory, and remote memory were intact; insight and judgment were intact; he was neither suicidal nor homicidal; his fund of knowledge was average; and he was neatly groomed and appropriately dressed. (R. 707.)

On January 15, 2019, Plaintiff again presented for treatment of his schizoaffective disorder. (R.711.)  Plaintiff was exhibiting mild depression with claims of a lack of interest in doing things, feeling depressed, having trouble sleeping with resulting fatigue, feeling bad about himself, and having trouble concentrating. (R. 711.)  Plaintiff reported difficulty in finding an apartment. (R. 711.)  It was noted that he had custody of his teenage son. (R. 711.)  Plaintiff also reported that he was no longer employed. (R. 711.)  Plaintiff denied any suicidal or homicidal ideation. (R. 711.)  Plaintiff was positive for

depression and seasonal affective disorder, bipolar type.  (R. 712.)  The psychiatric examination showed that Plaintiff was in some acute distress; he was alert, cooperative, and oriented to all spheres; his mood and affect were generally euthymic; his speech was of normal rate and rhythm; his thought processes were logical and goal-directed without evidence of disorder; there was no evidence of delusions or hallucinations; immediate recall, recent memory, and remote memory were intact; his insight and judgment were intact; his fund of knowledge was average; and he was well groomed and appropriately dressed.  (R. 712.)  Plaintiff was started on fluoxetine at 20 mg daily to help with both mood and anxiety, and he was to continue with his olanzapine for psychosis.  (R. 712.)

On March 13, 2019, Plaintiff presented for treatment of his schizoaffective disorder and anxiety.  (R. 721.)  Plaintiff was worried about whether he would get Social Security disability benefits.  (R. 721.)  He reported a lack of interest in doing things, feeling down, having trouble sleeping with resulting fatigue, feeling bad about himself, and occasionally had thoughts that maybe he would be better off dead or hurting himself. (R. 721.)  His PHQ-9 score was 10 points, indicating mild depression.  (R. 721.)  He was considered a low risk for any current suicidal ideation or behaviors.  (R. 721.)  Plaintiff desired no medication changes and was medication compliant with his olanzapine for his schizoaffective disorder.  (R. 721.)  CNP Sundberg noted that "[h]e has been doing better since he went on medication, but I do not believe that he can totally support himself by holding a job and does need the assistance of Social Security Disability."  (R. 721.)  The mental status examination showed that Plaintiff was in some acute distress; he was alert, cooperative and oriented to all spheres; his mood and affect were generally euthymic; his

speech was at a normal rate and rhythm; his thought processes were logical and goal-directed without evidence of disorder; he evidenced no delusions or hallucinations; his immediate recall, recent memory, and remote memory were intact; his insight and judgment were intact; he was neither suicidal nor homicidal; his fund of knowledge was average; and he was neatly groomed and appropriately dressed.  (R. 722.)  The diagnosis for Plaintiff was schizoaffective disorder, bipolar type, currently depressed, and anxiety, unspecified.  (R. 722.)  Plaintiff was to continue his current medications, including fluoxetine for anxiety and olanzapine for his schizoaffective disorder.  (R. 722.)

### B.   Plaintiff's Testimony Before the ALJ and Other Representations to the SSA

During the hearing before the ALJ, Plaintiff testified that he was not able to work because of his mental outbursts, anxiety, and depression, and because he was having fallouts with certain supervisors and certain management at different jobs he had worked at during the relevant period.  (R. 51.)  Plaintiff noted that he had been told "over the years" that he does not follow directions correctly, and that while he did not have a problem following orders, it would get stressful and overwhelming if he did something wrong.  (R. 55.)  With respect to handling instructions, Plaintiff testified that while he would not forget instructions, he would have a hard time understanding them, such as those dealing with doing inventory.  (R. 56.)  Plaintiff further claimed that he would walk off work when he got in arguments with other workers regarding his pace or how he was performing.  (R. 62.)

Plaintiff also reported difficulty since his previous Social Security benefits had been taken away.  (R. 57-58.)

Plaintiff reported that while his son was at school, he would attempt to obtain benefits, look for work, watch television, take care of a puppy, catch up with friends on social media, and prepare meals.  (R. 59-60.)

Plaintiff also filled out an undated function report.  (R. 275.)  Plaintiff claimed that he was very emotional and did not feel comfortable around a lot of people in one place.  (R. 275.)  He also represented that sometimes he thinks people are picking on him because he is slow and that he tries to stay to himself most of the time.  (R. 280.)  He also asserted that he could: pay attention long enough to hopefully comprehend; follow written instructions somewhat well; sometimes finish what he started; follow spoken instructions somewhat well; and get along well enough with authority figures to have good communication.  (R. 280-81.)  Plaintiff also asserted that he was not good at controlling his stress and that he has "to make do [sic] and go with the flow to the best of my ability."  (R. 281.)  In addition, he admitted that he was not experiencing any unusual behaviors or fears.  (R. 281.)

## C.  Documents Filed as Part of the Present Action

Plaintiff has filed a number of medical records that were not considered by the Commissioner.[3]  This includes a January 21, 2020 "To Whom it May Concern" letter from CNP Sundberg on Plaintiff's behalf stating:

---

[3]      The Court notes that Plaintiff also filed several documents that were already part of the administrative record.  (Dkts. 19, 19-1, 19-2, 19-3, 19-4.)  In any event, the Court has considered the documents as part of its decision.

This letter is written on behalf of my patient, [Plaintiff] to state [Plaintiff] is not able to be employed at this time due to his behavioral health issues.

[Plaintiff] has been diagnosed with schizoaffective disorder, bipolar type. Due to this health issue, he may have periods of mood disturbance, agitation, aggressive, paranoia and inability to function in activities of daily living.

As the above would cause [Plaintiff] not to be a reliable candidate for employment, I recommend that he receive social security disability but not for employment.

(Dkt. 8.)

Plaintiff also filed a March 2, 2021 "To whom it May Concern" letter from Heidi A. Greifzu, CNP:

This letter is written on behalf of my patient, [Plaintiff], to state [Plaintiff] is not able to be employed at this time due to his behavioral health concerns.

[Plaintiff] has been diagnosed with Schizoaffective disorder, bipolar type. Due to this health issue, he may have periods of mood disturbance, agitation, aggressive, paranoia and inability to function in activities of daily living.

As the above would cause [Plaintiff] not to be a reliable candidate for employment. I recommend that he receive social security disability.

(Dkt. 25.)

## III.    <u>LEGAL STANDARD</u>

Judicial review of an ALJ's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g); *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018), or whether the ALJ's decision results from an error in law, *Nash v. Comm'r, Soc. Sec. Admin.* 907 F.3d 1086, 1089 (8th Cir. 2018).  As recently defined by the Supreme Court:

The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding.

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

"[T]his court considers evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Nash*, 907 F.3d at 1089 (marks and citation omitted). "If substantial evidence supports the Commissioner's conclusions, this court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome." *Id.* "In other words, if it is possible to reach two inconsistent positions from the evidence, and one of those positions is that of the [ALJ], the Court must affirm the decision." *Jacob R. v. Saul*, No. 19-CV-2298 (HB), 2020 WL 5642489, at *3 (D. Minn. Sept. 22, 2020) (citing *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992)).

## IV.     DISCUSSION

The Court interprets pro se pleadings liberally. *Kliber v. Soc. Sec. Admin.*, 794 F. Supp. 2d 1025, 1039 (D. Minn. 2011) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). With this in mind, the Court notes that Plaintiff filed no brief that the Court can find in the record despite the Government generally referencing a brief that it determined inherently challenges the RFC assigned by the ALJ. (Dkt. 23 at 8.) That said, Plaintiff's Complaint asserts that the ALJ's decision "was not based on substantial

evidence in the records and contains the following errors of law:"

> I have been diagnosed with a mental disability 5) [sic] in early 2000's and I
> also was a Supplement Security recipient 4) and the Judge granted me
> benefits 3). I am unable to work because of my disability 2), and it is 1) hard
> to follow and concentrate on tasks that [are] really confusing to me.

(Dkt. 1 at 2.)

As best as this Court can discern, Plaintiff appears to be arguing that the ALJ

failed to properly account for his mental diagnoses and impairments with respect to his

mental RFC.

First, "[i]t is important to emphasize that it is not the diagnosis that becomes part

of the RFC, instead the RFC describes a Plaintiff's capabilities and limitations as a result

of medical conditions." *Long M. v. Berryhill*, No. 18-CV-862 (ECW), 2019 WL

2163384, at *7 (D. Minn. May 17, 2019) (cleaned up). Indeed, the fact "[t]hat a claimant

has medically-documented impairments does not perforce result in a finding of

disability." *Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir. 2004) (citing *Brown v.

Chater*, 87 F.3d 963, 964 (8th Cir. 1996)).

A disability claimant has the burden to establish his RFC. *See Eichelberger v.

Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). The Eighth Circuit has held that "a

'claimant's residual functional capacity is a medical question.'" *Id.* (quoting *Lauer v.

Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). "'[S]ome medical evidence' must support the

determination of the claimant's RFC, and the ALJ should obtain medical evidence that

addresses the claimant's 'ability to function in the workplace.'" *Id.* (quoting *Dykes v.

Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam)). However, "there is no

requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citing *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012)). Rather, the RFC should be "'based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Id.* (quoting *Myers*, 721 F.3d at 527). Indeed, "'[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.'" *Perks*, 687 F.3d at 1092 (citations omitted) (quoting *Cox v. Astrue*, 495 F.3d 614, 619-20 (8th Cir. 2007)).

As set forth previously, the ALJ found that Plaintiff had the following RFC:

> [T]o perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can (on a sustained basis) understand, remember, and carry out simple, repetitive instructions; use judgment in making simple work-related decisions; respond appropriately to supervision, coworkers, and usual work situations but only in work environments and when performing tasks requiring brief and superficial contact with coworkers and supervisors and no contact with the public; and deal with changes in a routine work setting as long as those changes are infrequent (defined as one or two changes per week).

(R. 20.)

In determining Plaintiff's RFC, the ALJ relied on Dr. Cremerius's opinion that Plaintiff was capable of understanding and remembering simple instructions; he was limited to performing simple, routine tasks; he would be limited to brief and superficial contact with co-workers and supervisors and no contact with the public; and he would be limited to adapting to only routine changes in a workplace setting. (R. 25-26.) The ALJ also relied on Dr. Sullivan's opinion that Plaintiff was able to carry out routine,

repetitive, and three-to-four step tasks with reasonably sustained persistence and pace, but he would be moderately impaired for detailed tasks and markedly impaired for complex, technical tasks; and that Plaintiff would be limited to brief and superficial contact with co-workers, supervisors, and the public.  (R. 26.)

The ALJ noted CNP Sundberg's opinion regarding Plaintiff's inability to work, but concluded that whether or not Plaintiff can work is directly related to the issue of the claimant's disability status, which is an issue reserved to the Commissioner.  (R. 26.)

The ALJ also concluded that Dr. Trulsen's opinion that Plaintiff's general mental capacity for tolerating stress and pressures typically found in an entry-level workplace appeared to demonstrate a moderate to occasionally marked level of impairment was not persuasive, because it was not fully supported by Dr. Trulsen's findings in his own consultative examination of Plaintiff, the medical evidence in the record, the fact that Plaintiff was working at the time of the October 10, 2017 examination, and Plaintiff's other daily activities.  (R. 25.)

Opinions of non-treating sources may be given weight insofar as they are consistent with and supported by evidence in the case record.  *See* 20 C.F.R § 416.920c(b); *see also Betts v. Colvin*, No. CIV. 14-2434 JJK, 2015 WL 2105855, at *28 (D. Minn. May 6, 2015).  In fact, an ALJ must consider and evaluate a state agency medical consultant's residual functional capacity assessment.  *See* 20 C.F.R § 416.913a(b); *see also Smith v. Colvin*, 756 F.3d 621, 627 (8th Cir. 2014).

Here, the medical record demonstrates that as of early 2017, Plaintiff's mental health was stable on medications.  (R. 356, 365, 366.)  During Plaintiff's healthcare

appointments, his mental health providers found that Plaintiff's thought processes were logical and goal directed without evidence of disorder; he showed no evidence of delusions or hallucinations; his immediate recall, recent memory, and remote memory were intact; his insight and judgment were intact; he was neither suicidal nor homicidal; and his fund of knowledge was average.  (*See, e.g.*, R. 679-80, 683, 687, 695, 701, 712, 722.)  Further, his frustration tolerance appeared developed at or near expected levels, and he was assessed with an average to low-average IQ.  (R. 687-88.)

The only time that Plaintiff appeared to have become agitated during the relevant period was on November 15, 2018, when he ran out of his medications.  (R. 706.)  However, Plaintiff was able to appropriately seek out medications despite his schizoaffective disorder.  (R. 706.)  Indeed, the relevant records show that his condition was in remission with medication.  (*See, e.g.*, R. 365, 366, 685.)  "If an impairment can be controlled by treatment or medication, it cannot be considered disabling."  *Hensley*, 829 F.3d at 933-34 (quoting *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009)).

With respect to Dr. Trulsen's opinion that Plaintiff could not handle general stress and pressures typically found in an entry-level workplace appearing to demonstrate a moderate to occasionally marked level of impairment due to interference with current mental health difficulties, the Court notes that this opinion contradicts Dr. Trulsen's own findings.  In particular, Dr. Trulsen's RFC for Plaintiff is comparable to that assigned by the ALJ, Dr. Trulsen noted that the medical record showed that Plaintiff's mental health condition was on remission with medication, and Dr. Trulsen acknowledged that Plaintiff was working at the time of the consultation.  (R. 685-89.)  "A medical source's

inconsistency may undermine his opinion and diminish or eliminate the weight given his opinions." *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006) (citation omitted); *see also* 20 C.F.R § 416.920c(b). Moreover, Plaintiff's report to Dr. Trulsen that he was working further undercuts the opinion that Plaintiff could not tolerate the pressures in an entry-level workplace. *See Thomas v. Berryhill*, 881 F.3d 672, 676 (8th Cir. 2018) ("Thomas's self-reported activities of daily living provided additional reasons for the ALJ to discredit Dr. Hollis's pessimistic views of her abilities."). The Court notes that Plaintiff represented to Dr. Trulsen that he was experiencing hallucinations, however, such claims are not borne out by the objective medical record, including a contemporaneous mental health appointment where there was no evidence of hallucinations. (R. 682.) In addition, Dr, Trulsen's opinion is undermined by the fact that there is no evidence of any hospitalization of Plaintiff resulting from his mental health impairments. Indeed, Plaintiff's schizoaffective disorder, depression, and other mental impairments were conservatively managed with medications and periodic medication appointments. *See Reece v. Colvin*, 834 F.3d 904, 909 (8th Cir. 2016) (physician's opinion undermined by claimant's conservative, routine course of treatment); *see also Rogers v. Berryhill*, 702 F. App'x 502, 503 (8th Cir. 2017) (taking into account the fact that the treating physicians "prescribed only conservative treatment" in the decision to discount the RFC opinion of a treating physician) (citation omitted); *Buford v. Colvin*, 824 F.3d 793, 797 (8th Cir. 2016) (finding that "conservative treatment [and] management with medication . . . support the ALJ's RFC determination"); *Su Yang v. Berryhill*, No. 17-CV-0686 (HB), 2018 WL 1277003, at *5 (D. Minn. Mar. 12, 2018)

(finding that the ALJ properly discounted the opinion of a treating physician because the claimant's "depression and other mental impairments were conservatively managed with medication, monthly medication evaluations with Dr. Bebchuk, and biweekly therapy sessions").

As to the statements of Plaintiff's treating CNPs that Plaintiff was unable to work (R. 8, 721; *see also* Dkt. 8; Dkt. 25), the Court notes that typically, conclusory opinions that a claimant is "disabled or unable to work, do not carry any special significance, because they invade the province of the Commissioner to make the ultimate determination of disability." *Davidson v. Astrue*, 578 F.3d 838, 842 (8th Cir. 2009) ( (cleaned-up (marks and citation omitted). Moreover, the January 2020 and March 2021 letters from CNPs asserting that Plaintiff was not able to work are outside the relevant period, and there is no indication in the letters that the opinions apply to the period between July 2017 and June 2019. Further, as set forth above with respect to Dr. Trulsen's opinion, *supra*, the CNPs' opinions are inconsistent with the objective medical evidence, as well as Plaintiff's conservative course of treatment, and daily activities. *See* 20 C.F.R § 416.920c.

In sum, the Court finds that substantial evidence in the record as a whole supports the weight given by the ALJ to the state agency medical opinions of Drs. Cremerius and Sullivan and that there is no basis to remand back to the Commissioner in light of the opinions filed as part of the present action.

B.     **Subjective Complaints**

As set forth above, the Commissioner must determine a Plaintiff's RFC based on

all of the relevant evidence, including his own description of his limitations. *See Myers*,

721 F.3d at 527 (citation omitted).   An ALJ should consider several factors, in addition to

the objective medical evidence, in assessing a claimant's subjective symptoms, including

daily activities; work history; intensity, duration, and frequency of symptoms; any side

effects and efficacy of medications; triggering and aggravating factors; and functional

restrictions.  *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); SSR 16-3p,

2016 WL 1119029, at *5-7 (S.S.A. Mar. 16, 2016)[4] (listing these factors as relevant in

evaluating the intensity, persistence, and limiting effects of a person's symptoms).   But

the ALJ need not explicitly discuss each factor.  *See Goff v. Barnhart*, 421 F.3d 785, 791

(8th Cir. 2005).

With respect to Plaintiff's subjective complaints, the ALJ found as follows:

> During the hearing, the claimant testified that he experienced anxiety and
> depression when working part-time, and that when he was trying to work, he
> was having 'fallouts' with supervisors and managers.  He stated that working
> was stressful because he has been told that he does not follow directions
> correctly.  He clarified that he does not have a problem following orders but
> that he finds it stressful and overwhelming if he is not doing something
> correctly.  This causes him to break down and feel like a nobody.  He also
> reported that he has a hard time understanding instructions and counting and

---

[4]     "SSR 16-3p became effective on March 28, 2016 and supersedes SSR 96-7p.  SSR
16-3p eliminates the use of the term 'credibility' from the Social Security
Administration's sub-regulatory policy, as the regulations do not use this term.  In doing
so, the Social Security Administration clarifies that subjective symptom evaluation is not
an examination of an individual's character.  Instead, the Social Security Administration
will more closely follow the regulatory language regarding symptom evaluation."
*Barbara M. v. Saul*, No. 18-CV-1749 (TNL), 2019 WL 4740093, at *7 n.9 (D. Minn.
Sept. 27, 2019).

that he forgets names.  He reported that he would walk off to avoid altercations with coworkers or supervisors, and he considers himself a hermit.  He reports having been dependent on Supplemental Security Income benefits in the past.  When his mother passed away, he moved to Duluth with his sister, who took him to treatment.  He reported having received inpatient mental health treatment three times and that he stayed a couple nights in a psychiatric unit because of outbursts and incidents.

* * *

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are not fully consistent because treatment records show that the claimant's symptoms have been stable on his medications since his filing date, and there is no indication that his condition would result in limitations beyond those defined in the above residual functional capacity.

(R. 20.)

While there is no dispute that the medical record supports Plaintiff's claim that he suffered from mental health impairments, the medical record supports the ALJ's findings that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in his decision.  As set forth above in Section IV.B of this Order, Plaintiff's conservative treatment and objective medical findings during the relevant period are inconsistent with his debilitating subjective complaints.  *See Crawford v. Colvin*, 809 F.3d 404, 410 (8th Cir. 2015) ("[T]he symptoms [the claimant] attested to are inconsistent with the objective medical evidence

found on the record, and hence, need not be given great weight when considered against objective medical evidence.") (citation omitted). Especially telling is the fact that Plaintiff's mental conditions were stable on medications with no side effects and that he had acknowledged this fact to mental health professionals. (R. 366, 356, 682, 685, 694, 706.) Also telling is that despite Plaintiff's testimony and assertions that he could not remember and understand instructions, his mental examinations did not demonstrate such deficits (with a normal memory and fund of knowledge) (*see supra*, Section II.A), as did his own representations in his function report to the SSA that he could understand and follow instructions. (R. 280-81.)

Plaintiff further testified that he had difficulty getting along with others due to mental outbursts and was having fallouts with certain supervisors and management. (R. 51.) However, Plaintiff's daily activities of living shows that Plaintiff was able to take care of his minor son, was able to take care of a puppy, lived with a friend, was able to go shopping (albeit with smaller crowds), and professed to having an adequate level of a social life and social acquaintances. (*See*, *e.g.*, R. 59-60, 687, 707.) Such social activities support the ALJ's findings that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (affirming ALJ's discount of claimant's subjective complaints of pain where the claimant was able to care for one of his children on daily basis). In addition, he asserted that he could get along well enough with authority figures to have good communication. (R. 280-81.) All this, coupled with the evidence that he worked, albeit

part-time, during the relevant period at a restaurant and as a housekeeper at a hotel (*see, e.g.*, R. 679, 694, 698, 707) cuts against Plaintiff's claims of debilitating subjective complaints. *See Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) ("Seeking work and working at a job while applying for benefits, are activities inconsistent with complaints of disabling pain.") (citing *Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996); *Bentley v. Shalala*, 52 F.3d 784, 786 (8th Cir. 1995)).

Again, the Court does not disagree that Plaintiff is limited by his mental impairments. However, the ALJ properly took those limitations into account in forming an RFC, which limited him to simple repetitive tasks, limited him to superficial contacts with coworkers and supervisors and no contact with the public, and limited him to infrequent changes in his work routine. (R. 20.) In sum, based on the evidence in the record as a whole, including Plaintiff's subjective complaints, the Court finds that the ALJ's RFC is supported by substantial evidence.[5]

---

[5] The Court also notes that the ALJ considered the September 2, 2011 ruling granting Plaintiff SSI benefits, however, the ALJ gave it little weight, in part because it involved a different time period as opposed to 2017 through 2019. (R. 27.) The Court finds that because the facts and circumstances are different and relate to different time-periods (2011 versus 2017) (*see* R. 119-23), the current ALJ is not bound by the decision from 2011. *See Ply v. Massanari*, 251 F.3d 777, 779 (8th Cir. 2001) (per curium) (finding the ALJ was not bound under administrative res judicata by a previous ALJ's findings because they were related to the claimant's disability status "at that time"). Thus, this Court finds the ALJ did not err by failing to adopt the previous ruling or give it any significant weight in his determination.

## V.        ORDER

Based on the above, and on the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.        Defendant Commissioner of Social Security Andrew Saul's Motion for

Summary Judgment (Dkt. 22) is **GRANTED**; and

2.        This case is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**


DATED: March 19, 2021                    *s/Elizabeth Cowan Wright*
                                         ELIZABETH COWAN WRIGHT
                                         United States Magistrate Judge